UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| MICHAEL BARNES,<br><br>    Plaintiff,<br><br>    v.<br><br>ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 2:21-CV-400 JD |

**OPINION AND ORDER**

Plaintiff Michael Barnes appeals the denial of his claim for Disability Insurance Benefits. The ALJ had denied his claim after determining he was not disabled. The Court now remands the case to the Commissioner, finding that the ALJ committed reversible error by failing to consider medical findings of Mr. Barnes's cardiologist.

**A.  Factual Background**

**(1)** *Relevant Medical Evidence*

Mr. Barnes's relevant medical history began in June 2019, when he twice went to the emergency department with complaints of shortness of breath and chest and back pain. (R. at 244, 257.) On his second visit, he was admitted for observation. An echocardiogram on June 12th showed a moderately dilated left ventricle, a visually estimated ejection fraction of 15% to 20%, severely reduced left ventricular systolic function, borderline concentric left ventricular hypertrophy, severe global hypokinesis of the left ventricle, grade 3 diastolic dysfunction, mild to moderate left atrial enlargement, borderline right atrial enlargement, mild to moderate aortic regurgitation, and moderate to severe mitral regurgitation. (R. at 426.) The calculated ejection

fraction was 26.3%.[1] R. at 428. A left heart catheterization was performed on June 13, revealing 30% to 40% stenosis of the left anterior descending artery. (R. at 295.) He was hospitalized overnight for acute-on-chronic systolic congestive heart failure. (R. at 268.)

Shortly after being discharged from the hospital, Mr. Barnes began seeing a cardiologist, Dr. Sulman Hussain. At Dr. Hussain's orders, Mr. Barnes stopped working at his warehouse job with Amazon.com.

In September 2019, Dr. Hussain referred Mr. Barnes to Dr. Pratik Patel: "As he is still at risk for sudden cardiac death due to low EF of 25-30% even on [E]ntresto, will refer to Dr. Pratik Patel for discussion on [implantable cardioverter defibrillator (ICD)] placement." (R. at 423.)

Dr. Patel placed the ICD on November 5, and Mr. Barnes was discharged home the following day in stable condition. (R. at 637, 639.) Dr. Pratel indicated that it was unlikely that Mr. Barnes would be able to return to his warehouse job.

On a follow-up visit with Dr. Hussain on December 30, 2019, Mr. Barnes said that he had low energy and "lazy spells" and realized that he "has some limits." He reported trying "to walk or ride his bike when he can." Dr. Hussain discussed participating in a phase 2 cardiac rehab program "to try to build up his stamina due to [c]ongestive heart failure and cardiomyopathy." He noted that Plaintiff should "remain off work at this time." (R. 778–79.)

Dr. O. Villarroel conducted a consultative physical examination of Plaintiff on March 12,

---

[1] "What do ejection fraction numbers mean?
- 55 to 70% – Normal heart function.
- 40 to 55% – Below normal heart function. Can indicate previous heart damage from heart attack or cardiomyopathy.
- Higher than 75% – Can indicate a heart condition like hypertrophic cardiomyopathy, a common cause of sudden cardiac arrest.
- Less than 40% – May confirm the diagnosis of heart failure."

https://www.pennmedicine.org/updates/blogs/heart-and-vascular-blog/2022/april/ejection-fraction-what-the-numbers-mean (last visited February 6, 2023).

2020. (R. at 875.) Plaintiff reported shortness of breath on exertion, but physical examination was basically normal R. at 873. (R. at 873–75.) However, his impression of Plaintiff's condition was of active congestive heart failure status post defibrillator placement, which he opined was "very limiting to physical activities." (R. at 875.)

An echocardiogram on March 18, 2020, was largely normal except for a calculated ejection fraction of 39%. (R. at 877.)

Plaintiff saw Dr. Hussain again on June 29, 2020. (R. at 895.)  Dr. Hussain regarded Plaintiff's condition as stable and planned a repeat echocardiogram in January 2021. (*Id.*)

**(2)** *ALJ's Finding*

On November 21, 2019, Mr. Barnes applied for Disability Insurance Benefits, claiming that he had become disabled at the time of his first emergency room visit. In his application, Mr. Barnes primarily alleged that he was disabled due to congestive heart failure and atrial fibrillation.

On May 4, 2021, after reviewing Mr. Barnes's medical records and listening to his testimony at the telephonic hearing, the ALJ found that he was not disabled. The ALJ determined that Mr. Barnes suffers from multiple severe impairments, including congestive heart failure and atrial fibrillation, s/p placement of subcutaneous ICD; mild mitral regurgitation; and hyperlipidemia. (R. at 19.) The ALJ then found that none of these impairments or combination of impairments was equal in severity to the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) Next, the ALJ concluded that Mr. Barnes was able to perform work at the sedentary exertional level[2] with a number of nonexertional limitations:

---

[2] The Commissioner's regulations define sedentary work:

>the claimant can lift and carry, push/pull a maximum of 10 pounds, with occasional lifting and carrying of lesser weights such as file folders and small tools. The claimant can stand and/or walk two hours of an eight-hour workday, and sit for six hours of an eight-hour workday. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds. The claimant must avoid exposure to hazards such as dangerous moving machinery and unprotected heights. The claimant must avoid operation of a motorized vehicle. The claimant must avoid concentrated exposure to temperature extremes, high humidity, fumes, odors, dusts, gases, and poor ventilation.

(R. at 20.) While Mr. Barnes could not perform past relevant work, the ALJ determined that Mr. Barnes could perform a significant number of jobs in the national economy and, therefore, was not disabled. (R. at 24–25.) Mr. Barnes requested a review by the Appeals Council, which was denied, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. *See* 42 U.S.C. § 405(g).

**B.   Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the

---

*Sedentary work*. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

**C.     Standard for Disability**

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the national economy.

See *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**D.     Discussion**

Mr. Barnes's strongest argument, and the only one the Court ultimately needs to discuss in detail, is that the ALJ did not consider the specific functional limitations that Mr. Barnes's cardiologist, Dr. Hussain, provided on October 28, 2019. (*See* R. at 547–48.) In particular, Dr. Hussain filled out a check box form designed for the administrator of Amazon.com's disability insurer. In relevant part, the form asked Dr. Hussain to address "the full range of restrictions/limitations at the time patient stopped working." The form contains check boxes for indicating whether Mr. Barnes is able to "continuously with standard breaks" or "intermittently with standard breaks" sit, stand, or walk. Dr. Hussain indicated that Mr. Barnes is "unable" to do these activities either continuously or intermittently. (R. at 548.) He also indicated that Mr. Barnes could never bend at waist, kneel/squat, climb ladder, climb step stool, drive, or reach; he also had no ability for fine or gross manipulation. (R. at 548.) The ALJ ignored these limitations under the purview that they were part of Dr. Hussain's general findings that Mr. Barnes was unable to return to his past work at the warehouse, an issue ultimately reserved for the ALJ.[3] (R. at 24, ALJ's Op. ("Dr. Hussain . . . opined the claimant was unable to return to work, which addresses the ultimate issue reserved to the Commissioner, and is therefore inherently neither persuasive nor helpful.").) The ALJ considered this form simultaneously with Dr. Hussain's generic statements at other times that Mr. Barnes was unable to return to work. Dr. Hussain's other statements had no specific limitations listed and are contained in letters to the employer's disability insurance provider or office visit notes. (*See* R. at 464, 482, 497, 778.) The Defendant

---

[3] The following limitations in the RFC conflict with Dr. Hussain's stated limitations: ". . . The claimant can stand and/or walk two hours of an eight-hour workday, and sit for six hours of an eight-hour workday. The claimant can occasionally . . . kneel . . . . The claimant must avoid operation of a motorized vehicle . . . ." (ALJ Op., R. at 20.)

7

argues that the ALJ properly discounted Dr. Hussain's statements about Mr. Barnes's limitations because they relate to Mr. Barnes's ability to perform work within the warehouse setting only.

The Court fails to understand how Dr. Hussain's statements—that his patient is unable to either continuously or intermittently, with standard breaks, sit, stand, or walk, and that he is never able to do a range of other basic activities—are limited to the warehouse setting only. There's no indication on the form or in Dr. Hussain's statements that he's limiting them to the particulars of the warehouse operations, as if sitting, standing, and walking, and other activities were terms of art of his past employment. Yet, the Defendant urges the Court to ignore the specific limitations, arguing that they were part of "a blanket statement that Mr. Barnes was unable to return to work." (DE 16, Commiss. Resp. Br. at 9–10 ("That is, yet another statement on an issue reserved for the Commissioner.").) But that's precisely the error that the ALJ committed: he failed to address Dr. Hussain's statements that Mr. Barnes suffered severe physical limitations, instead clumping them with Dr. Hussain's generic assertions that Mr. Barnes was unable to return to work. *See Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (an ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection). In other words, the ALJ erroneously mischaracterized Dr. Hussain's statements.

The Defendant further contends that the limiting statements should be ignored because some of them are unsupported by the record (e.g., that Mr. Barnes could never perform fine manipulations). The Acting Commissioner suggests that such over-limitation, especially in the context of check-marked answers, gave reason for the ALJ to doubt the validity of other statements. But this argument is an after-the-fact rationalization. There's no indication that the ALJ had any issue with Dr. Hussain's credibility or that he thought the phrasing of the questions,

or how the form was filled out, had any bearing on his conclusions. Nor did the ALJ compare or contrast Dr. Hussain's findings with the findings of the other doctors or Mr. Barnes's testimony at the hearing. In other words, the Defendant extrapolates a line of reasoning not present in the ALJ 's decision, which it cannot do. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010), as amended on reh'g in part (May 12, 2010) (observing that *Chenery* doctrine forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced). Instead, the ALJ's opinion shows that he simply failed to consider Dr. Hussain's specific answers about Mr. Barnes's limitations and did not consider whether they were persuasive, that is, supported by, and consistent with, other medical evidence in the record. *See* 20 C.F.R. § 404.1520c(a) (setting out supportability and consistency as the most important factors for considering evidence). While the ALJ need not comment on every piece of evidence in the record, he cannot ignore important evidence that directly contradicts the limitations set forth in the RFC. *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001) (remand was needed because the ALJ's decision offered no clue as to whether she examined the full range of medical evidence as it relates to plaintiff's claim). Accordingly, a remand is needed so that Dr. Hussain's statements may be considered along with other evidence. Importantly, the Court casts no opinion as to whether Dr. Hussain's assessment was correct; only that it should be considered.

Finally, on remand it may be helpful for the ALJ to seek a clarification of Dr. Villarroel's opinion insofar as he found Mr. Barnes to be both "active" and "very limit[ed] to physical activities" due to "H/O Congestive Heart Failure dx 2019-defibrilator placed." (R. at 875.)

### C. Conclusion

The Court REVERSES the Agency's decision and REMANDS this matter to the Agency for further proceedings consistent with this opinion. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: February 13, 2023

                                              /s/ JON E. DEGUILIO
Chief Judge
United States District Court